IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THERESA ROUSE, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. GLR-17-3482 |
| P.O. CHRIS FLORIO, et al., | * | |
| Defendants. | * | |

* * *

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants P.O. Chris Florio ("Officer Florio"), P.O. John Romeo ("Officer Romeo"), and P.O. Billy Shiflett's ("Officer Shiflett") (collectively, the "Officer Defendants") Motion for Summary Judgment (ECF No. 36). This action under 42 U.S.C. § 1983 (2018) arises from Plaintiffs K.V.[1] and Theresa Rouse's interaction with Officer Defendants in May 2016. The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the following reasons, the Court will grant the Motion in part and deny it in part.

## I.     BACKGROUND[2]

On May 7, 2016, Plaintiff K.V., a thirteen-year-old boy, and other juveniles,

---

[1] The Court identifies K.V. and other minors in this Memorandum Opinion by their initials only.

[2] Unless otherwise noted, the facts outlined here are set forth in Plaintiffs' Amended Complaint (ECF No. 5). To the extent the Court discusses facts that Plaintiffs do not allege in their Amended Complaint, they are uncontroverted and the Court views them in the light most favorable to the non-moving party. The Court will address additional facts when discussing applicable law.

entered a gas station (the "Gas Station") on 900 N. Monroe Street in Baltimore, Maryland. (Am. Compl. ¶ 15, ECF No. 5). At around 12:00 p.m., Sergeant Michael Brinn ("Sergeant Brinn") and Officer Anthony Ward ("Officer Ward"), who are not named as Defendants in the Amended Complaint,[3] responded to a call-for-service at the Gas Station regarding juveniles who were fighting. (Defs.' Mot. Summ. J. ["Defs.' Mot."] Ex. A ["Ward Incident Report"] at 1–2, ECF No. 36-3; Pls.' Resp. Opp'n Defs.' Mot. Summ. J. ["Pls.' Resp."] Ex. 3 ["Florio Interrogs."] at 7, ECF No. 39-3). As Officers Brinn and Ward approached the Gas Station, they saw male juveniles rolling and smoking an object that appeared to be a hand-rolled cigar. (Ward Incident Report at 2). The Gas Station owner approached Sergeant Brinn and told him that these were the juveniles who were smoking marijuana inside his store, prompting his 9-1-1 call. (Id.). Officer Ward smelled marijuana on one of the juveniles, M.H., searched him, and found a hand-rolled cigar containing green leaves. (Id.).

Thereafter, other officers, including Officer Defendants, arrived at the Gas Station. (See id.; Florio Interrogs. at 7; Defs.' Mot. Ex. D ["Shiflett Interrogs."] at 7, ECF No. 36-6). Officer Romeo and Officer Ryan Ernst ("Officer Ernst") stopped three more juveniles who Sergeant Brinn had observed inside the Gas Station who smelled of marijuana. (Ward Incident Report at 2; Florio Interrogs. at 14). Officer Shiflett arrived and monitored the

---

[3] Officers Florio, Romeo, and Shiflett are the only Baltimore Police Department officers named as Defendants in the Amended Complaint. (See Am. Compl. at 1). The Amended Complaint brings claims against "John Doe Officers" and "John Doe Supervisors," (id.), but only Officers Florio, Romeo, and Shiflett have moved for summary judgment. Plaintiffs have not named any of the other officers identified in this Memorandum Opinion as defendants in this case.

crowd gathered in front of the Gas Station. (<u>See</u> Shiflett Interrogs. at 7).

Plaintiff Theresa Rouse heard about the incident and walked up to the Gas Station, where she saw that M.H. was one of the detained juveniles. (<u>See </u>Defs.' Mot. Ex. C ["Rouse Dep."] 16:1–6, 22:8–12, ECF No. 36-5; Pls.' Resp. Ex. 2 ["Rouse Crim. Charges"] at 2, ECF No. 39-2). Rouse told Officer Defendants that she was the grandmother of one of the juveniles. (Rouse Dep. 16:8–10). Officer Defendants allege that Rouse said she was the grandmother of M.H. specifically. (Defs.' Mot. Ex. J ["Florio Incident Report"] at 2, ECF No. 36-12). Officer Shiflett called M.H.'s mother, who denied that Rouse was M.H.'s grandmother but said Rouse was dating M.H.'s grandfather. (<u>Id.</u>; Rouse Dep. 22:19–21). Officer Defendants then asked Rouse to leave and she did. (Rouse Dep. 16:12–14).

Meanwhile, K.V. had fled the Gas Station, but Sergeant Brinn apprehended him in a nearby alley. (<u>See</u> Ward Incident Report at 2; Defs.' Mot. Ex. E ["K.V. Dep."] 12:2–13, ECF No. 36-7). Sergeant Brinn searched K.V. and brought him back to the Gas Station to sit with the other juveniles. (Ward Incident Report at 2). Rouse then returned to the scene and saw the officers detaining K.V., her actual grandson. (Rouse Dep. 16:16–21). A cell phone video (the "Cell Phone Video") taken by an onlooker offers a view of what happened next. (Florio Interrogs. at 12; <u>see generally</u> Defs.' Mot. Ex. G ["Cell Phone Video"], ECF No. 36-9).

Officer Florio observed two other officers searching or adjusting the handcuffs on K.V. as K.V. sat on a curb with his head close to his knees. (Cell Phone Video 00:01–00:33). Rouse approached the Officers, protesting their treatment of K.V., at which point Officer Florio told her to "get back." (<u>Id.</u> 00:32–00:36). Around this time, Officer Florio

also told Rouse to dispose of the lit cigarette she had in her hand. (See Rouse Dep. 30:1–2). As Officer Florio approached her, Rouse, who was facing Officer Florio, "plucked" her cigarette behind him. (Id. at 30:1–3; see Cell Phone Video 00:35–00:38). Officer Florio then moved to arrest Rouse. (Cell Phone Video 00:38–00:40). Defendants allege Rouse stepped back to resist arrest, whereas Rouse alleges she was pushed back. (Florio Interrogs. at 7–8; Rouse Dep. 29:3–5).

Officer Florio and Officer John Rosenblatt ("Officer Rosenblatt") then forced Rouse to the ground, Officer Florio put his knee against her back, and pulled her hands behind her body to handcuff her while she lay on her stomach. (Cell Phone Video 00:38–00:49; see Florio Interrogs. at 7–8). Officers Florio and Rosenblatt then carried Rouse by her hands and feet to a nearby police car. (Cell Phone Video 00:38–01:04). When Officers Florio and Rosenblatt could not get Rouse fully into the police car, they then carried her to the Gas Station curb and sat her there. (Id. 01:04–01:45). Rouse then fell to her side and yelled that she was injured and needed to go to the hospital. (Id. 01:45–02:37). Officer Florio then called an ambulance, which took Rouse to the hospital. (Florio Incident Report at 2).

The Officers continued to detain the juveniles, including K.V., at the Gas Station until their parents or guardians arrived to pick them up. (See Ward Incident Report at 2). At approximately 1:12 p.m., about twenty minutes after Rouse's arrest, K.V. was released to his mother. (Id.; K.V. Dep. 13:13–15, 14:17–19). Upon Rouse's release from the hospital, she was charged with second-degree assault, possession of a dangerous weapon

with intent to injure, reckless endangerment, and disorderly conduct, all of which were eventually dismissed. (Rouse Crim. Charges at 2–3)

On November 22, 2017, Plaintiffs sued Officer Defendants, John Doe Officers (collectively, with Officer Defendants, "All Officer Defendants") and John Doe Supervisors, and the City of Baltimore (the "City"). (ECF No. 1). On November 29, 2017, Plaintiffs filed an eight-count Amended Complaint, alleging: violations of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution against the City[4] (Count I); violations of the Fourth and Fourteenth Amendments against John Doe Supervisors (Count II); false arrest in violation of the Fourth and Fourteenth Amendments against All Officer Defendants (Count III); excessive force in violation of the Fourth and Fourteenth Amendments against All Officer Defendants (Count IV); failure to intervene to stop the excessive force in violation of the Fourth Amendment against All Officer Defendants (Count V); malicious prosecution in violation of the Fourth Amendment against Defendants (Count VI); and abuse of process in violation of the Fourth Amendment against Defendants (Count VII). (Am. Compl. ¶¶ 31–126). Plaintiffs bring their claims under 42 U.S.C. § 1983 (2018). (Id. at 7, 15, 17, 20, 23, 25, 27). They seek compensatory and punitive damages, as well as attorney's fees under 42 U.S.C. § 1988 (2018). (Id. ¶¶ 1, 126).

On January 24, 2019, Officer Defendants filed their Motion for Summary Judgment. (ECF No. 36). On February 7, 2019, Plaintiffs filed an Opposition. (ECF No. 39). On February 27, 2019, Officer Defendants filed a Reply. (ECF No. 40).

---

[4] On February 12, 2018, Plaintiffs voluntarily dismissed the City from the case. (ECF No. 11).

## II.    DISCUSSION

**A.    <u>Standard of Review</u>**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. <u>Ricci v. DeStefano</u>, 557 U.S. 557, 586 (2009); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986) (citing <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is genuine dispute of material fact. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." <u>Othentec Ltd. v. Phelan</u>, 526 F.3d 135, 141 (4th Cir. 2008) (quoting <u>Beale v. Hardy</u>, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of her case where she has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**B.    Analysis**

Officer Defendants move for summary judgment on Plaintiffs' claims against them, Counts III–VII. The Court will address each count in turn, beginning with Plaintiffs' claims for false arrest.

### 1.    False Arrest (Count III)

Officer Defendants argue that they were not involved in K.V.'s detention, that Officers Romeo and Shiflett were not involved in Rouse's arrest, that Officer Florio had probable cause to arrest Rouse, and that even if he did not, Officer Florio is entitled to qualified immunity from this claim. Plaintiffs counter that Officer Florio did not have

probable cause to arrest Rouse and is not entitled to qualified immunity. The Court agrees with Officer Defendants.

In order to state a claim under § 1983 for false arrest in violation of the Fourth Amendment, a plaintiff must show that her arrest was made without probable cause. Carter v. Durham, No. WMN-14-2635, 2015 WL 641370, at *2 (D.Md. Feb. 12, 2015) (citing Street v. Surdyka, 492 F.2d 368, 372–73 (4th Cir. 1974)). Probable cause exists if the evidence before the law enforcement officer is "sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect [has] committed . . . an offense." Gray v. State, No. CCB-02-0385, 2004 WL 2191705, at *6 (D.Md. Sept. 24, 2004) (quoting Porterfield v. Lott, 156 F.3d 563, 569 (4th Cir. 1998)). Whether there is probable cause depends on the totality of the circumstances. Gilliam v. Sealey, 932 F.3d 216, 234 (4th Cir. 2019) (quoting Smith v. Munday, 848 F.3d 248, 253 (4th Cir. 2017)). "While probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." Id. (quoting United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998)). "It is an objective standard of probability that reasonable and prudent persons apply in everyday life." Id. (quoting Gray, 137 F.3d at 769). Whether probable cause to arrest exists is based only on the information the officers had at the time of the arrest. Id. (first citing Munday, 848 F.3d at 253; then citing Graham v. Gagnon, 831 F.3d 176, 184 (4th Cir. 2016)). The court does not consider "the subjective beliefs of the arresting officers to determine whether they thought that the facts constituted probable cause." Id. (quoting Munday, 848 F.3d at 253).

Here, it is undisputed that Officer Defendants did not participate in K.V.'s

apprehension or detention, and therefore no reasonable jury could find them liable for false arrest as to K.V. Similarly, it is undisputed that Officers Shiflett and Romeo did not effect Rouse's arrest, and therefore no reasonable jury could find that they are liable to her for false arrest.

Turning to the false arrest claim against Officer Florio, Defendants argue that Rouse committed several offenses, each of which gave Defendant Florio probable cause for the arrest: second-degree assault, disorderly conduct, hindering, false statement, and littering. Under Maryland law, a person "may not willfully act in a disorderly manner that disturbs the public peace." Md. Code Ann., Crim. Law § 10-201(c)(2) (West 2019). A person also "may not willfully fail to obey a reasonable and lawful order that a law enforcement officer makes to prevent a disturbance to the public peace." Id. at § 10-201(c)(3). In considering this charge, Maryland courts have considered whether the conduct in question disturbs, incites, or tends to incite a crowd of people in the same area. See Spry v. State, 914 A.2d 1182, 1187 (Md. 2007); Harris v. State, 206 A.2d 254, 256 (Md. 1965) (holding that appellant was guilty of disorderly conduct because he ignored officers' repeated requests to remain outside of a building and "appeal[ed] to passions of his sympathetic crowd of onlookers").

Here, Rouse refused to stay away from the officers despite repeated requests to do so and yelled using profanity during her second and third encounters with Officer Defendants, which, the Cell Phone Video shows, ultimately incited the crowd behind her during her third encounter. Plaintiffs' reliance on Diehl v. State, 451 A.2d 115, 119 (Md. 1982) is unavailing. In Diehl, a police officer pulled over a car over whose passenger,

Diehl, got out; the officer unlawfully instructed Diehl to get back in the car; and Diehl protested the officer's demand using profanity. Id. at 116–17. The Court of Appeals concluded that when "a person is acting in a lawful manner (a passenger getting out of a stopped car) and is the object of an unlawful police order, it is not usually a criminal violation . . . to verbally protest a police officer's insistence . . . to such an order." Id. at 123. But since Diehl, the Court of Appeals has limited its holding to self-help. See Hill v. State, 20 A.3d 780, 785 (Md. 2011) (reasoning that Diehl applies only to self-help circumstances where defendant argues that his own arrest was illegal); Briggs v. State, 599 A.2d 1221, 1226 (Md.Ct.Spec.App. 1992) ("We distinguish Diehl and the case at bar . . . by pointing out that the defendant in Diehl behaved lawfully."). Here, Plaintiff Rouse was not protesting her own arrest, but rather the arrest of Plaintiff K.V., and was not behaving lawfully when she repeatedly ignored Defendants' requests to leave the scene. Given the totality of the circumstances, a reasonable officer in Officer Florio's position would have believed that Rouse had committed a crime. See Gray, 2004 WL 2191705, at *6; Gilliam, 932 F.3d at 234. Because Officer Florio had probable cause to arrest Rouse, she cannot show that her arrest lacked probable cause, as she must to prove this claim. See Carter, 2015 WL 641370, at *2. Accordingly, the Court will grant summary judgment against K.V. and Rouse, and in favor of Officer Defendants, as to Count III.

### 2. Malicious Prosecution (Count VI)

Officer Defendants argue that they are not liable for malicious prosecution because Officer Florio had probable cause to arrest Rouse and because K.V. was not charged. Plaintiffs argue that Officer Defendants did not have probable cause and that the other

elements of malicious prosecution are present. The Court agrees with Officer Defendants.

Malicious prosecution, brought under § 1983, is a "Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) (quoting Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000)). In order to be held liable under malicious prosecution, the defendant must have "(1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings were terminated in plaintiff's favor." Id. at 647.

Here, Officer Defendants were not involved in detaining K.V., and K.V. faced no charges and, therefore, no criminal proceedings. As a result, no reasonable jury could find that Officer Defendants maliciously prosecuted K.V. Further, because Officers Shiflett and Romeo did not personally arrest Rouse, no reasonable jury could find that these Defendants maliciously prosecuted against her. As discussed above, Officer Florio had probable cause to arrest Rouse. Because Rouse's arrest was supported by probable cause, she cannot prove her claim for malicious prosecution against Officer Florio.

As a result, there is no genuine dispute of material fact that Officer Defendants did not seize either K.V. or Rouse without probable cause. Accordingly, the Court will grant summary judgment against Plaintiffs and in favor of Officer Defendants on Plaintiffs' malicious prosecution claims.

### 3. Abuse of Process

In their briefing, the parties treat malicious prosecution and abuse of process as one and the same. To the extent that Plaintiffs intended to bring a claim for malicious abuse of

process, which is another name for malicious prosecution, <u>see, e.g.</u>, <u>Rice v. Calvert Cty.</u> <u>Bd. of Cty. Comm'rs</u>, No. DKC 2007-1005, 2009 WL 10685346, at *5 (D.Md. Mar. 9, 2009), their claims fail for the same reasons stated above. To the extent they intended to bring a claim for abuse of process, the common law tort, it also fails.

Under Maryland law, abuse of process occurs when "when a party has willfully misused criminal or civil process after it has issued in order to obtain a result not contemplated by law." <u>Thomas v. Gladstone</u>, 874 A.2d 434, 439 (Md. 2005) (first citing <u>Krashes v. White</u>, 341 A.2d 798, 802 (Md. 1975); then citing <u>1000 Fleet Ltd. P'ship v.</u> <u>Guerriero</u>, 694 A.2d 952, 956 (Md. 1997)). Unlike malicious prosecution, abuse of process "is concerned with the improper use of criminal or civil process in a manner not contemplated by law after it has been issued, without the necessity of showing lack of probable cause." <u>Id.</u> (quoting <u>Walker v. Am. Sec. & Trust Co. of Washington</u>, 205 A.2d 302, 307 (Md. 1964)). Importantly, abuse of process is a state common law claim that does not support "recovery under § 1983 which . . . provides redress only for violations of [f]ederal law." <u>Id.</u>

Here, Plaintiffs' abuse of process claim must fail because they bring it under § 1983 and, in any event, pleaded only the elements of the tort without any supporting facts. For those reasons, Plaintiffs' abuse of process claims could not have survived a motion to dismiss. At this stage of the litigation, Plaintiffs have offered no evidence beyond those conclusory allegations that Officer Defendants "misused criminal . . . process after it issued in order to obtain a result not contemplated by law." <u>Id.</u> As a result, the Court will grant

summary judgment in favor of Officer Defendants and against Plaintiffs on their abuse of process claims.

### 4. Excessive Force (Count IV)

Plaintiffs argue that even if Officer Florio had probable cause to arrest Rouse, Officer Florio used unreasonable and disproportionate force under the circumstances. Officer Defendants argue that Officer Florio's take-down was proportionate and reasonable.

Again, because it is undisputed that Officer Defendants did not actively participate in K.V.'s detention, no reasonable jury could find that Defendants used excessive force on him. Officers Shiflett and Romeo also did not arrest Rouse; therefore, no reasonable jury could find that these Defendants used excessive force on her. The Court now turns to the claim against Officer Florio.

Excessive force in the course of an arrest is analyzed "under the Fourth Amendment's 'objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 388 (1989). In assessing whether such force is reasonable, the Fourth Amendment requires "careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. at 396 (quoting United States v. Place, 462 U.S. 696, 703 (1983)). Though "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion . . . [the reasonableness standard] requires careful attention to the facts and circumstances of each particular case," including (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether

he is actively resisting arrest or attempting to evade arrest by flight." Id. (citing Tennessee v. Garner, 471 U.S. 1, 8–9 (1985)). The "reasonableness standard" requires an objective analysis, judged from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id.

Here, Officer Florio had probable cause to arrest Rouse, but it was for being disorderly. Rouse was agitated and did not promptly follow all orders, but she had not made physical contact with the Officers or anyone else at the scene, or threatened to. The severity of the crime for which Officer Florio had probable cause to arrest her was therefore relatively mild. Relatedly, she had identified herself as a grandmother and was considerably smaller than both Officers Florio and Rosenblatt, who had no reason to believe that she was armed or especially dangerous. See Smith v. Ray, 781 F.3d 95, 102 (4th Cir. 2015) (reasoning that the second Graham factor weighed in favor of a "smaller woman" plaintiff who was unarmed who was tackled and arrested by an officer who was a "pretty good size[d] man"). Further, even if Rouse took a step back when Officer Florio attempted to arrest her, such force may not constitute resistance. Id. at 103 ("Nor could a reasonable officer believe that [plaintiff's] initial act of pulling her arm away when [defendant] grabbed her without warning . . . justified [defendant's] decision to throw her down, jam his leg into her back, and wrench her arm behind her."). The Court therefore concludes there is a genuine dispute of material fact as to whether the force Officer Florio used to subdue Rouse was excessive.

### 6.     Failure to Intervene (Count V)

Officer Defendants argue there was no constitutional violation during which they

failed to intervene and, if there was, they did not have a reasonable opportunity to do so. Plaintiffs counter that Officer Defendants were at the Gas Station around the time that K.V. and Rouse were detained or arrested, and therefore a reasonable jury could conclude that they failed to intervene to prevent any constitutional violations.

An officer may be liable under § 1983 on a theory of bystander liability, if he "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Randall v. Prince George's Cty., 302 F.3d 188, 204 (2002); see 42 U.S.C. § 1983 (2018) ("Every person who . . . subjects, or causes to be subjected . . . any citizen of the United States . . . to the deprivation of any rights . . . secured by the Constitution . . . shall be liable to the party injured in an action at law . . . ."). In order for an officer to be liable, there must be a "realistic opportunity to intervene and end the unlawful" activity. Randall, 302 F.3d at 204. Determinations of whether an officer "had sufficient time to intercede or was capable of preventing harm being caused by another officer is an issue of fact for the jury unless . . . a reasonable jury could not possibly conclude otherwise." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). Further, if no excessive force "is applied by the fellow officer, the officer witnessing the conduct 'cannot be held liable under bystander liability for a failure to intervene.'" Jarvis v. Securitas Sec. Servs. USA, Inc., No. 11-CV-00654-AW, 2012 WL 527597, at *6 (D.Md. 2012) (citing Howie v. Prince George's Cty., No. DKC 2006-3465, 2009 WL 2426018, at *6 (D.Md. Aug. 5, 2009)); Dodson v. Prince George's Cty., No. JKS 13-2916, 2016 WL 67255, at *3 (D.Md. (2016)).

Here, given the evidence, there is a genuine dispute of material fact about whether

Officer Defendants knew the circumstances of K.V.'s detention or arrest such that they could know that his constitutional rights were being violated. In their depositions, K.V. and Officer Defendants indicate that Sergeant Brinn chased K.V. down an alley, away from the other officers. Only if Officer Defendants knew that their fellow officers were violating K.V.'s constitutional rights would the other two prongs of the bystander liability test come into play.

As for Officer Defendants' bystander liability with respect to K.V.'s excessive force claim, the Court concludes that no reasonable jury could find Officer Defendants liable. Neither K.V. nor Rouse testify about anything that could be construed as excessive force in their depositions. The only evidence of any force that any Officer applied to K.V. is at the beginning of the Cell Phone Video when a non-Officer Defendant pushes K.V.'s head down for perhaps a second in the course of either searching or handcuffing him. Even if any Officer Defendants saw that and knew in real time that it constituted unconstitutional excessive force, which is doubtful, there was no reasonable or realistic opportunity for them to intervene before the brief incident was over. The Court, therefore, will grant summary judgment in favor of Officer Defendants as to K.V.'s failure to intervene claim.

As for Plaintiff Rouse, Officers Romeo and Shiflett admit that they saw Officer Florio arrest her. The Court has concluded that Officer Florio had probable cause to arrest Rouse but concluded there is a genuine dispute of material fact as to whether the force used during her arrest was excessive. Given the nature of the force used, there also remains a genuine dispute of material fact concerning whether Officers Romeo and Shiflett knew that Officer Florio was violating Rouse's constitutional rights and, given the sequence of events

over the next couple of minutes, whether Officers Romeo and Shiflett had a realistic opportunity to intervene. See Branen, 17 F.3d at 557. Accordingly, the Court will deny Officer Defendants' Motion as to Rouse's failure to intervene claim.

### 7. Qualified Immunity

Officer Defendants argue they are entitled to qualified immunity on all claims, but they only make a specific argument regarding the probable cause required for the false arrest and malicious prosecution claims. Plaintiffs contend Officer Defendants are not entitled to qualified immunity.

The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); West v. Murphy, 771 F.3d 209, 213 (4th Cir. 2014). Qualified immunity protects government officials when they have made "mere mistakes in judgment, whether the mistake is one of fact or one of law." Butz v. Economou, 438 U.S. 478, 507 (1978). As "an immunity from suit rather than a mere defense to liability, . . . [qualified immunity] is effectively lost if a case is erroneously permitted to go to trial." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (emphasis removed). Accordingly, courts should resolve qualified immunity questions prior to discovery or on summary judgment if possible. See Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987).

There is a two-prong test to determine if a government official is protected by qualified immunity: (1) whether the facts that the plaintiff has alleged or shown "make out a violation of a constitutional right"; and (2) whether that right was "clearly established"

17

at the time of the purported violation. Pearson v. Callahan, 555 U.S. 223, 232 (2009) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). Courts have discretion to resolve these two prongs in whichever order they deem appropriate, based on the circumstances of the case. Id. at 236. The answers to both prongs must be in the affirmative for a plaintiff to prevail. Batten v. Gomez, 324 F.3d 288, 293–94 (4th Cir. 2003) (considering the issue in the context of a police officer's motion for summary judgment on qualified immunity grounds). Once the defendant raises qualified immunity as a defense, the plaintiff bears the burden of proof on the first prong, that is, to show a constitutional violation occurred. Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007) (citing Bryant v. Muth, 994 F.2d 1082, 1086 (4th Cir. 1993)). The defendant bears the burden on the second prong, that is, to show that the right was not clearly established at the time of the violation. Id. at 378 (quoting Wilson v. Kittoe, 337 F.3d 392, 397 (4th Cir. 2003)).

The second prong involves a three-step analysis. First, the court identifies "the specific constitutional right allegedly violated." Collinson v. Gott, 895 F.2d 994, 998 (4th Cir. 1990). Second, the court inquires whether at the time of the alleged violation, that right was "clearly established." Id. Third, the court assesses "whether a reasonable person in the official's position would have known that his conduct would violate that right." Id.; see Cloaninger ex rel. Cloaninger v. McDevitt, 555 F.3d 324, 331 (4th Cir. 2009) (explaining that a right is "clearly established" when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted" (quoting Saucier, 533 U.S. at 202)). To determine if a right was "clearly established," a district court must first examine "cases of controlling authority" in its jurisdiction," that is, "decisions of the Supreme Court, [the]

court of appeals, and the highest court of the state in which the case arose." <u>Booker v. S.C.</u>
<u>Dep't of Corr.</u>, 855 F.3d 533, 538 (4th Cir. 2017) (first quoting <u>Amaechi v. West</u>, 237 F.3d
356, 363 (4th Cir. 2001); then quoting <u>Owens ex rel. Owens v. Lott</u>, 372 F.3d 267, 279
(4th Cir. 2004)), <u>cert. denied,</u> 138 S.Ct. 755 (2018)).

Even when a plaintiff proves that an official has violated his rights, the official may
nevertheless be entitled to qualified immunity "if a reasonable person in the 'official's
position could have failed to appreciate that his conduct would violate' those rights."
<u>Torchinsky v. Siwinski</u>, 942 F.2d 257, 261 (4th Cir. 1991) (quoting <u>Collinson</u>, 895 F.2d at
998). In this way, the qualified immunity standard allows mistakes—"[e]ven law
enforcement officials who 'reasonably but mistakenly conclude that probable cause is
present' are entitled to immunity." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991) (quoting
<u>Creighton</u>, 483 U.S. at 641). This allowance for mistakes is "ample"—the qualified
immunity standard protects "all but the plainly incompetent or those who knowingly
violate the law." <u>Id.</u> at 229 (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 342, 349 (1986)
(internal quotation marks omitted)). This allowance "exists because 'officials should not
err always on the side of caution' because they fear being sued." <u>Id.</u> (quoting <u>Davis v.</u>
<u>Scherer</u>, 468 U.S. 183, 196 (1984)). "If reasonable mistakes were actionable, difficult
questions of discretion would always be resolved in favor of inaction, and effective law
enforcement would be lost." <u>Torchinsky</u>, 942 F.2d at 261.

Here, to the extent K.V.'s failure to intervene claim focuses on Officer Defendants
failure to intervene in his false arrest, Officer Defendants are entitled to qualified immunity.
First, Officer Defendants were not involved in his arrest, which took place away from the

Gas Station. Thus, it is unclear whether they saw him run or if they learned anything from Sergeant Brinn about K.V.'s apprehension, and if a constitutional right was violated. Second, the U.S. Supreme Court and the U.S. Court of Appeals for the Fourth Circuit have established that qualified immunity applies when an officer reasonably but mistakenly concludes that probable cause existed. See Hunter, 502 U.S. at 228–29 (reasoning that qualified immunity applied when agent arrested suspect without a warrant because a reasonable agent could have believed that probable cause existed); Waterman v. Batton, 393 F.3d 471, 478–79 (4th Cir. 2005) (holding that qualified immunity applied when police officers used deadly force to stop suspect's car because a reasonable officer in their position would conclude that probable cause existed). Third, given the rapid sequence of events the parties describe in their depositions and which is apparent from the Cell Phone Video, if K.V. was arrested without probable cause, Officer Defendants could reasonably but mistakenly have believed, as bystanders, that K.V.'s arrest was supported by the requisite probable cause. See Hunter, 502 U.S. at 227.

With respect to Rouse's excessive force claim, Officer Florio is not entitled to qualified immunity. As discussed above, Rouse has shown there is a genuine dispute of material fact regarding whether Officer Florio employed excessive force. The Fourth Circuit has held that "officers using unnecessary, gratuitous, and disproportionate force to seize a secured, unarmed citizen, do not act in an objectively reasonable manner and, thus, are not entitled to qualified immunity." Meyers v. Baltimore Cty., 713 F.3d 723, 734 (4th Cir. 2013) (quoting Bailey v. Kennedy, 349 F.3d 731, 744–45 (4th Cir. 2003)); see also Smith, 781 F.3d at 105 (holding that arrestee's right to be free from police officer throwing

her to the ground when she was only suspected of a misdemeanor and not attempting to flee was clearly established at the time for qualified immunity purposes). As a result, Officer Florio is not entitled to qualified immunity regarding Rouse's excessive force claim.

Finally, Officer Defendants make no argument regarding their qualified immunity with respect to Rouse's failure to intervene claim. Rouse has presented sufficient evidence of a constitutional violation, and Officer Defendants have not cited any law that such violation was not clearly established at the time of Rouse's arrest. As a result, the Court concludes they are not entitled to qualified immunity as to that claim.

## III.    CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Officer Defendants' Motion for Summary Judgment (ECF No. 36). The Court will grant the Motion as to Counts III, VI, and VII; as to Count V with respect to K.V.'s claim; as to Count IV with respect to K.V.'s claim, and as to Count IV with respect to Rouse's claim against Officers Romeo and Shiflett. The Court will otherwise deny the Motion. A separate Order follows.

Entered this 30th day of September, 2019.


_____/s/_____
George L. Russell, III
United States District Judge